**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JEAN L. CELESTIN, J.C. #1 and            Civil No. 15-7608 (NLH/KMW)
J.C. #2, by and through their
mother and guardian, JESSIE
CLAIRVIL,                                **OPINION**

              Plaintiffs,

        v.

WEST DEPTFORD TOWNSHIP, et
al.

              Defendants.

---

**APPEARANCES:**

Robert Nathaniel Agre
4 Kings Highway East
Haddonfield, NJ 08033
      *Attorney for Plaintiffs*

Deborah Beth Rosenthal
Gebhardt & Kiefer, PC
1318 Route 31
PO Box 4001
Clinton, NJ 08809-4001
      *Attorney for Defendants West Deptford Township, Corporal*
      *Steven C. Shirey, Patrolman James Greco, Sergeant Mark D.*
      *White, Police Chief Samuel DiSimone, and Patrolman Joseph*
      *LaMalfa*

Matthew Christian Weng
Chance & McCann
201 West Commerce Street
Bridgeton, NJ 08302
      *Attorney for Defendant Gloucester County*

David Andrew Tuason
State of New Jersey
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
     *Attorney for Defendant Asst. Prosecutor Vincent Malfitano,*
     *Prosecutor Sean Dalton and Agent William Donovan*

James Douglas Young
Steven J. Daroci
Fox Rothschild LLP
997 Lenox Drive
Building 3
Lawrenceville, NJ 08543-5231
     *Attorneys for Defendant Solvey Solexis, Inc., Russell*
     *Cundy, Joseph Auletto, and Charles Jones*

Kurt E. Kramer
Capehart Scatchard
8000 Midlantic Drive
Suite 300S
Mount Laurel, NJ 08054
     *Attorney for Defendant Thomas Marscholwitz*


**HILLMAN, District Judge**

     This case concerns an alleged accidental trespass into

property owned by Solvay Specialty Polymers USA ("Solvay") in

West Deptford, New Jersey.  Plaintiff Jean Celestin alleges that

on February 9, 2014, while driving his children to a birthday

party, his GPS system rerouted him to Solvay's property, which

is a restricted chemical plant.  Celestin alleges he was

arrested and charged with criminal trespass, and his two

children were detained.  Plaintiffs bring constitutional claims

against five groups of Defendants: (1) Gloucester County [Doc.

No. 34]; (2) Gloucester County Prosecutor Sean Dalton, former

Gloucester County Assistant Prosecutor Vincent Malfitano,
Gloucester County Agent William Donovan (collectively, "the
prosecutor Defendants") [Doc. No. 35]; (3) Solvay, and Solvay
employees, Joseph Auletto, Russell Cundy and Charles Jones
(collectively, the "Solvay Defendants") [Doc. No. 36]; (4)
Solvay security guard Thomas Marschlowitz [Doc. No. 43]; and (5)
Police Chief Samuel DiSimone, Patrolman James Greco, Patrolman
Joseph LaMalfa, Corporal Steven C. Shirey, Sergeant Mark D.
White and West Deptford Township (the "West Deptford
Defendants").

## I.  <u>JURISDICTION</u>

The Court has jurisdiction over Plaintiffs' federal claims
under 28 U.S.C. § 1331, and supplemental jurisdiction over
Plaintiffs' state law claims under 28 U.S.C. § 1367(a), which
provides in relevant part, "[I]n any civil action of which the
district courts have original jurisdiction, the district courts
shall have supplemental jurisdiction over all other claims that
are so related to claims in the action within such original
jurisdiction that they form part of the same case or controversy
under Article III of the United States Constitution."

## II.  <u>STANDARDS OF LAW</u>

### A. Motion to Dismiss

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted

3

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in

4

Twombly expounded the pleading standard for 'all civil actions'
. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) ("Iqbal . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal
complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has
provided a three-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the Court must take note of the elements
needed for plaintiff to state a claim.  Santiago v. Warminster
Tp., 629 F.3d 121, 130 (3d Cir. 2010).  Second, the factual and
legal elements of a claim should be separated; a district court
must accept all of the complaint's well-pleaded facts as true,
but may disregard any legal conclusions.  Id.; Fowler, 578 F.3d
at 210 (citing Iqbal, 129 S. Ct. at 1950).  Third, a district
court must then determine whether the facts alleged in the
complaint are sufficient to show that the plaintiff has a
plausible claim for relief.  Id.  A complaint must do more than
allege the plaintiff's entitlement to relief.  Fowler, 578 F.3d
at 210; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224,
234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element.  This
'does not impose a probability requirement at the pleading

5

stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B. Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

7

of a genuine issue of material fact."); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s.]'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

III. **DISCUSSION**

In his amended complaint, Celestin alleges that on February 9, 2014 at approximately 2:45 p.m. he "accidently entered" Solvay's chemical plant located at 10 Leonard Lane in West Deptford Township, New Jersey, with his two minor children in the back seat of the car. (Am. Compl. ¶¶ 24-25.) Celestin was able to enter the restricted facility because the front gate was open to let out an authorized contractor. The Solvay security officers then notified West Deptford police who arrived at the plant. At the request of Solvay, West Deptford officers charged Celestin with criminal trespass in violation of N.J.S.A. 2C:18-3a, which provides, in pertinent part:

> Unlicensed entry of structures. A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or surreptitiously remains in any research facility, structure, or separately secured or occupied portion thereof, or in or upon utility company property, or in the sterile area or operational area of an airport.

N.J. Stat. Ann. § 2C:18-3. In sum and substance, Celestin argues there was no probable cause to charge him with criminal trespass because he explained to Solvay security and police officers he was merely lost and therefore did not knowingly trespass onto Solvay's property. Celestin further alleges in his amended complaint that his minor children witnessed his arrest and experienced severe emotional distress as a result.

(Am. Compl. ¶ 117.)

Plaintiffs' amended complaint contains 15 counts: Counts I-V: deprivation of the Plaintiffs' civil rights in violation of 42 U.S.C. § 1983 against the state actor Defendants; Count VI: negligence as to Defendant, Township of West Deptford; Count VII: negligence as to Gloucester County; Counts VIII and IX: negligence as to private actor Defendants; Count X: intentional infliction of emotional distress as to all Defendants; Count XI: negligent infliction of emotional distress as to all Defendants; Count XII: civil conspiracy as to all Defendants; Count XIII: all causes of action against fictitiously-identified Defendants; Count XIV: malicious prosecution as to Defendants, Shirey, Jones and Malfitano; and Count XV: false imprisonment as to Cundy and Auletto, two of the Solvay Defendants.

Gloucester County seeks to dismiss all claims against it. The prosecutor Defendants seek to dismiss all the federal claims, and seek summary judgment as to the state claims for failure to comply with the New Jersey Tort Claims notice requirement. The Solvay Defendants seek to dismiss all claims against them. Solvay security guard Thomas Marschlowitz seeks to dismiss all the claims asserted against him. The West Deptford Defendants seek to dismiss all the claims against them, and also seek summary judgment on the basis of qualified immunity. For the reasons that follow, the Court will dismiss

all of Plaintiffs' claims without prejudice.  Plaintiffs will have thirty (30) days to submit an amended complaint if they can cure the deficiencies noted herein.  Summary judgment will be granted to the West Deptford Defendants on Counts I and IV on the basis of qualified immunity.

**Count I: 42 U.S.C. § 1983 Against all State Actor Defendants (Fourth Amendment)**

In the amended complaint, Plaintiffs claim that the "State Actor Defendants," West Deptford Township, Corporal Steven C. Shirey, Patrolman James Greco, Patrolman Joseph LaMalfa, Sergeant Mark D. White, Police Chief Samuel DiSimone, Gloucester County, Prosecutor Sean Dalton, Agent William Donovan, and Assistant Prosecutor Vincent Malfitano, unlawfully detained and arrested Plaintiffs without probable cause "in violation of their rights to liberty and freedom from unlawful detention and seizure, which rights are guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, and Article One, Paragraphs One and Seven of the New Jersey." (Am. Compl. 26.)

The Fourth Amendment guarantees an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV.  Correspondingly, the Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir.

1995).  Thus, to prevail on a claim for false arrest, a plaintiff must prove that the officer defendants lacked probable cause to arrest him.  See Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).  Thus, "[t]he proper inquiry in a Section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."  Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).  "[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt.  The arrest is constitutionally reasonable."  Virginia v. Moore, 553 U.S. 164, 171 (2008).  Thus, a plaintiff must state "the facts [showing that, under the] circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested."  Mosley v. Wilson, 102 F.3d 85, 94-5 (3d Cir. 1996).  A claim for false imprisonment based on the underlying false arrest also requires a plaintiff to prove lack of probable cause.  Groman, 47 F.3d at 636.

    Local governments, however, cannot be held liable for the actions of their employees solely based on the doctrine of respondeat superior.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 659 (1978); Bielevicz v. Dubinon, 915

F.2d 845, 849–50 (3d Cir. 1990).  In order to successfully state a claim for municipal liability, a plaintiff must allege that the employees' actions were pursuant to a policy or custom of the local government.  Monell, 436 U.S. at 694; Watson v. Abington, 478 F.3d 144, 155 (3d Cir. 2007).  A policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict, while a custom is an act that has not been formally approved by a decision maker, but is so widespread as to have the force of law. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (further citations omitted).  "A policy or custom can be established in three ways: (1) the entity or supervisor promulgates an applicable policy statement and the act the plaintiff complains of is the implementation of that policy; (2) the policymaker, without a formally announced policy, violates federal law itself; or (3) the 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Defreitas v. Montgomery Cty. Corr. Facility, 525 F. App'x 170, 177 (3d Cir. 2013) (citing Natale, 318 F.3d at 584).

13

Three sets of Defendants seek to have Count I dismissed.

**1. Gloucester County**

The claim against Gloucester County will be dismissed.
Plaintiffs allege Gloucester County "failed to establish the
appropriate standards for the detention and/or arrest of
individuals, as a result of which Plaintiffs in this case were
deprived of their constitutional rights." (Am. Compl. ¶ 30.)
Plaintiff further alleges Gloucester County "implemented
official polices that were the moving force that resulted in the
violation of Plaintiff's constitutional rights." (Am. Compl. ¶
36.)  This is insufficient to state a claim against Gloucester
County because Plaintiff fails to allege what official policy or
custom of Gloucester County caused a constitutional deprivation.
Hildebrand v. Allegheny County, 757 F.3d 99, 110–11 (3d Cir.
2014) (complaint must plead facts to support Monell liability);
McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009)
(stating to satisfy pleading standard for Monell claim,
complaint "must identify a custom or policy, and specify what
exactly that custom or policy was"). Accordingly, Count I
against Gloucester City will be dismissed without prejudice.

**2. Dalton, Malfitano and Donovan**

Claim I as asserted against Prosecutor Dalton, former
Assistant prosecutor Malfitano and Agent Donovan will also be
dismissed.

Dalton and Malfitano argue they are immune from suit in their official capacities pursuant to the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As a general proposition, a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345 (1979).

To determine whether Eleventh Amendment immunity applies to a state agency, a court must consider three factors: (1) the source of the agency's funding — i.e., whether payment of any judgment would come from the state's treasury; (2) the status of the agency under state law; and (3) the degree of autonomy from

15

state regulation.  See Fitchik v. New Jersey Transit Rail
Operations, Inc., 873 F.2d 655, 659 (3d Cir.) (en banc), cert.
denied, 493 U.S. 850 (1989).  In Coleman v. Kaye, 87 F.3d 1491,
1500-02 (3d Cir. 1996), cert. denied, 519 U.S. 1084 (1997), the
Third Circuit considered these factors and recognized that "when
[New Jersey county] prosecutors engage in classic law
enforcement and investigative functions, they act as officers of
the state." Id. at 1505; Beightler v. Office of Essex Cty.
Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009) (county
prosecutors acted as arms of the state when they performed the
classic law enforcement and investigative functions for which
they are chiefly responsible).  None of Plaintiffs' claims
against Dalton and Malfitano contained in Count I encompass any
activity other than classic law enforcement and investigative
functions.  Thus, they are shielded by the Eleventh Amendment.
Accordingly, the Court finds that the claims against Dalton and
Malfitano in their official capacities will be dismissed without
prejudice.

Dalton and Malfitano also argue that the claims asserted
against them in their individual capacities in Count I should
also be dismissed because they are barred by the doctrine of
prosecutorial immunity under § 1983.

Where a suit is brought against a state official in his
individual capacity, the State is not the real party in interest

16

because the recovery, if any, would come from the personal assets of the individual. <u>Melo v. Hafer</u>, 912 F.2d 628, 635 (3d Cir. 1990), <u>aff'd</u>, 502 U.S. 21 (1991). Although the Eleventh Amendment does not provide sovereign immunity to state officials for claims brought against them in their individual capacity, prosecutors are entitled to absolute immunity under Section 1983 if he or acts within the scope of his duties in initiating and pursuing a criminal prosecution. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410 (1976). Thus, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993).

Courts have upheld prosecutorial immunity in cases involving the initiation of a prosecution, the indictment or filing of charges against an individual and the failure to properly investigate before initiating a prosecution. <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1410-11 (3d Cir. 1991) (citing <u>Rose v. Bartle</u>, 871 F.2d 331, 345 n.12 (3d Cir. 1989) (absolute immunity from allegation of instituting grand jury proceedings without investigation and without good faith belief that any wrongdoing occurred); <u>Henzel v. Gerstein</u>, 608 F.2d 654, 657 (5th Cir. 1979) (alleged failure to investigate prior to filing information protected by absolute immunity)).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function.  See Kalina v. Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to the truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); Burns v. Reed, 500 U.S. 478 (1991) (prosecutor absolutely immune from liability for participation in probable cause hearing, but only entitled to qualified immunity for giving legal advice to police).  Immunity attaches to actions "intimately associated with the judicial phases of litigation," but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.  Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994) (quoting Imbler, 424 U.S. at 430, 96 S.Ct. 984).  "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006) (quoting Burns v. Reed, 500 U.S. 478, 786 (1991)).  Here, Plaintiffs make the following claims in the amended complaint:

- Malfitano and Donovan "authorized the arrest of Plaintiff, Jean L. Celestin" (Am. Compl. ¶ 29.)

- Dalton supervised Donovan and Malfitano (Am. Compl. ¶ 58.)

18

- Dalton "tacitly authorized the unlawful acts of Defendants" (Am. Compl. ¶ 59.)

- Defendants' decision to charge Plaintiff was made without probable cause (Am. Compl. ¶ 79.)

Dalton and Malfitano have met their burden of showing that absolute immunity is justified because Plaintiff has pled no facts showing Defendants acted outside their role as advocates for the State.  As stated in the amended complaint, Plaintiffs' allegations against Dalton and Malfitano concern "the initiation of a prosecution, or the indictment or filing of charges against an individual." Schrob, 948 F.2d at 1410-11.  As such, Plaintiff's individual capacity claim against Dalton and Malfitano contained in Count I will be dismissed without prejudice.  Plaintiffs may amend their complaint if they can plead facts which show Defendants engaged in administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.

As to Agent Donovan, Plaintiffs fail to state a claim against him in Count I.  In the amended complaint, Donovan is described as an agent of the prosecutor's office, and is alleged to have "authorized the arrest of Plaintiff, Jean L. Celestin." (Am. Compl. ¶ 29.)  However, Celestin has plead no facts showing Dalton's involvement in his arrest, or what actions Dalton took which violated his constitutional rights.  "Threadbare recitals

19

of the elements of a cause of action, supported by mere
conclusory statements" are insufficient to state a plausible
claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
Accordingly, the claims against Dalton contained in Count I will
be dismissed without prejudice for failure to state a claim.

    **3. West Deptford Township, Corporal Steven C. Shirley,**
       **Patrolman James Greco, Sergeant Mark D. White, Patrolman**
       **Joseph LaMalfa and Police Chief Samuel DiSimone**

    The West Deptford Defendants seek summary judgment as to
Count I on the basis of qualified immunity.  In the amended
complaint, Celestin claims these Defendants arrested and charged
him with criminal trespass without probable cause.  (Am. Compl.
¶¶ 27, 30, 32.)  The Court will grant summary judgment to the
West Deptford Defendants on Count I because based on the
undisputed facts, no reasonable jury could find a lack of
probable cause and thus no constitutional right was violated.

    "[G]overnment officials performing discretionary functions
generally are shielded from liability for civil damages insofar
as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "When
properly applied, [qualified immunity] protects 'all but the
plainly incompetent or those who knowingly violate the law.'"
Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v.
Briggs, 475 U.S. 335, 341 (1992)).

In determining qualified immunity, the first question is whether "the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right[.]" Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Second, a court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.  See Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009).  Courts may begin their consideration with either prong.  Id. at 236.

The failure of the arresting officer to have probable cause is a required element in both false arrest and malicious prosecution.  "The elements of a false-arrest claim are (a) that an arrest occurred; and (b) that the arrest was made without probable cause."  Brown v. Makofka, 644 F. App'x 139, 143 (3d Cir. 2016).  To prove malicious prosecution, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007) (footnote omitted).

21

To determine whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.  Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004).  "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted).  Rather, probable cause to arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Id.  "In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime."  Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005).

In evaluating the sufficiency of probable cause, the Third Circuit has directed that the question of probable cause is one for the jury, unless, when accepting all of a plaintiff's allegations as true, no reasonable jury could find a lack of probable cause.  Montgomery v. De Simone, PTL, 159 F.3d 120, 124 (3d Cir. 1998) (citations omitted).

In Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005), a woman was charged with trespassing under

22

Pennsylvania law after breaking into a home to gather evidence that she had been assaulted in the home.  She argued that the officers did not have probable cause to arrest her because she explained she had no criminal intent and the statute required that she "knowingly" enter the building.  Id. at 602.  The Third Circuit found that her explanation in entering the residence was one factor to be considered, but not "dispositive."  Id.

Rather, the Third Circuit found that analysis must center on whether the totality of the circumstances justified a reasonable belief on the part of the officers that Wright committed a crime.  Id. at 603.  The court explained that, "the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate.  The officers did not believe Wright's explanation for her entry.  Although they may have made a mistake, their belief was not unreasonable in light of the information the officers possessed at the time."  Id. at 603.  The Third Circuit reversed the district court and determined there was no constitutional violation and therefore the arresting officers were entitled to qualified immunity.  Id.

Here, the following facts are undisputed.  Corporal Steven Shirey of the West Deptford Police Department responded to Solvay's report of an unauthorized vehicle entry.  Corporal Shirey knew Solvay to be a "critical infrastructure" because it

23

contained hazardous chemicals.  (Statement of Material Facts
("SMF") ¶ 2.)  When Corporal Shirey arrived, Celestin's vehicle
was "deep inside the facility."  (SMF ¶ 4.)  Solvay employees
were told by the security guard, Thomas Marshlowitz, that a
vehicle breached the front gate without stopping.  (SMF ¶ 7.)
Celestin made several turns and was far inside the facility
before Marshlowitz was able to catch up with the vehicle.  (SMF
¶ 16.)  Marsholowtiz began yelling at Celestin that was he was
trespassing.  (SMF ¶ 17).  Celestin told Corporal Shirey that he
followed his GPS into the facility, and once inside, realized he
was not at his destination.  (SMF ¶¶ 24-25.)  Corporal Shirey
wrote in his report that even when the front gate is open, there
is a stop sign posted at the gate which states: "Stop, check
with guard before entering plant."  (SMF ¶ 36.)  Corporal Shirey
also wrote in his report that about forty yards past the gate
there is a security post and the same sign: "Stop, check with
guard before entering plant."  (SMF ¶ 37.)  When Charles Jones,
head of Health, Safety, and Environment at Solvay was advised of
the situation he stated he wanted charges to be filed against
Celestin for trespassing.  (SMF ¶¶ 38-39.)  The prosecutor's
office thereafter determined that Celestin could be charged with
criminal trespass, and Corporal Shirey placed Celestin under
arrest and transported him to the West Deptford Police Station.
(SMF ¶¶ 48-50.)  He was released that day.

Viewing the evidence in the most favorable light to Plaintiffs, as the Court must do in deciding a motion for summary judgment, the Court finds that no reasonable juror could find that the facts and circumstances within arresting officer's knowledge were insufficient to warrant a reasonable person to believe that Celestin was trespassing onto Solvay's property. In other words, there was probable cause for the officers to believe that Plaintiff knowingly entered the prohibited premises knowing he was not licensed or privileged to do so in violation of N.J.S.A. 2C:18-3. Two factors the New Jersey Supreme Court considers in determining whether a person has violated the trespass statute are notice to the trespasser and the duration of incursion. State v. Gibson, 218 N.J. 277, 288, 95 A.3d 110, 116 (2014). Here, Celestin had sufficient notice against trespass, including a gate, two signs which instructed him to stop and check in with security, and the fact that he was in an industrial complex. Further, he drove far into the facility. Id. at 288 (State could not prove it had probable cause to charge a person with trespassing where it could not prove the degree of encroachment or how long the encroachment lasted, "whether seconds or longer"). The encroachment here was not fleeting or momentary, and there is no dispute that Celestin was "deep" into the facility before he finally stopped his vehicle.

Celestin argues he did not see any trespassing signs

because he was focused on his GPS, in other words, that he did not trespass "knowingly," as the statute requires.  While Celestin has perhaps stated a plausible defense to his trespass charge (which was dismissed), it does not affect the analysis of whether the officers lacked probable cause.  The analysis must center on whether, under the facts and circumstances of the case, a reasonable person would believe that an offense has been or is being committed by the person to be arrested.  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (further citations omitted).  The Court finds the undisputed facts show probable cause existed to arrest Plaintiff with trespassing as a matter of law.  Plaintiffs failed to establish that a constitutional right was violated.  The West Deptford Defendants are entitled to qualified immunity as to Count I.[1]

**Count II: Supervisory Liability Against Police Chief DiSimone**

In the amended complaint, Plaintiffs allege Police Chief

---

[1] For the same reasons, the Court finds an unlawful seizure did not occur.  "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.  Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).  Here, there are no allegations of this kind.

DiSimone is the "highest ranking policy maker for the West
Deptford Township Police Department" (Am. Compl. ¶ 45.), held a
supervisory position over Greco, Shirey, LaMalfa and White (id.
¶ 47.) and "tacitly authorized" their unlawful acts (id. ¶ 48.).
Because the Court has determined as a matter of law that the
West Deptford Defendants are entitled to qualified immunity on
Count I because there is no constitutional violation, the claim
contained against Police Chief DiSimone for supervisor liability
fails as a matter of law.

**Count III: Prosecutor Sean Dalton**

In Count III, Plaintiffs allege Prosecutor Sean Dalton
deprived them of their constitutional rights in overseeing the
agents of the Gloucester County Prosecutor's Office and
authorizing the unlawful detention and arrest of Plaintiffs.
(Am. Compl. ¶¶ 57, 58, 61.)  For the same reasons analyzed in
Count I, supra, the official and individual capacity claims
against Dalton will be dismissed without prejudice.

**Count IV: State-Created Danger/Substantive Due Process Against
     All State Actor Defendants**

Plaintiffs allege in Count IV that their "substantive due
process rights to be free from state-created dangers were
clearly established constructional rights at the time of
Defendants' acts and omissions, and a reasonable individual
would have known that their acts and omissions would violate

27

these clearly established constitutional rights." (Am. Compl. ¶ 73.) Plaintiffs further allege that Defendants violated this right by "taking the affirmative steps of detaining and/or arresting the Plaintiffs without reasonable suspicion and/or probable cause." (Am. Compl. ¶ 69.) This claim is asserted against West Deptford Township, Shirey, Greco, LaMalfa, White, DiSimone, Gloucester County, Prosecutor Sean Dalton, Agent Donovan, and former prosecutor Malfitano.

As a preliminary matter, the Fourth Amendment, not substantive due process, should guide the analysis. Albright v. Oliver, 510 U.S. 266 (1994) (arrest without probable cause did not violate substantive due process rights; violation, if any, implicated Fourth Amendment). The Court has discussed Plaintiff's Fourth Amendment claim in section I, supra, and for the same reasons, this claim fails.

To the extent Plaintiffs claim Defendants are liable under a theory of state-created danger this claim also fails. Even though the due process clause generally does not confer an affirmative right to governmental aid, a person may have a cause of action against the state or governmental actor if "state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" Bright v. Westmoreland County, 443 F.3d 276,

28

280 (3d Cir. 2006) (citing <u>DeShaney v. Winnebago Cty. Soc.</u>
<u>Servs. Dept.</u>, 489 U.S. 189 (1989) and quoting <u>Schieber v. City</u>
<u>of Philadelphia</u>, 320 F.3d 409, 416 (3d Cir. 2003)).  To state a
meritorious "state-created danger" claim, a plaintiff must
prove: (1) the harm ultimately caused was foreseeable and fairly
direct; (2) a state actor acted with a degree of culpability
that shocks the conscience; (3) a relationship between the state
and the plaintiff existed such that the plaintiff was a
foreseeable victim of the defendant's acts, or a member of a
discrete class of persons subjected to the potential harm
brought about by the state's actions, as opposed to a member of
the public in general; and (4) a state actor affirmatively used
his or her authority in a way that created a danger to the
citizen or that rendered the citizen more vulnerable to danger
than had the state not acted at all.  <u>Id.</u> (citations omitted).

Here, most obviously, there are no allegations of conduct
by the state actors which "shocks the conscience."  Taking
Plaintiffs' allegations as true, there are no facts to support
this cause of action.  The Court will therefore dismiss this
claim without prejudice as to all Defendants.

**Count V: 42 U.S.C. 1983 Claims Against Shirey, Greco,**
       **LaMalfa, White, Donovan and Malfitano in their**
       **Individual Capacities**

Count V is a claim against Shirey, Greco, LaMalfa, White,
Donovan and Malfitano in their individual capacities pursuant to

29

42 U.S.C. § 1983 for their decision to "detain, arrest and/or file a criminal charge against the Plaintiffs . . . without reasonable suspicious and/or probable cause." (Am. Compl. ¶ 79.) Plaintiff claims these actions violated the Fourth and Fourteenth Amendments and Article One, Paragraph Seven of the New Jersey Constitution.

For the reasons described in Section I, _supra_, the claims against Donovan and Malfitano will be dismissed and the West Deptford Defendants are entitled to qualified immunity.

**Count VI: Negligence, Negligent Hiring, Negligent Supervision/Training Retention against West Deptford**

In the amended complaint, Plaintiff alleges West Deptford "maintained a duty to the Plaintiffs, through common law, statutory law and regulatory law, to exercise reasonable care compatible with the standards of professionalism in law enforcement." (Am. Compl. ¶ 87.) Plaintiffs further allege that West Deptford breached this duty by failing to exercising reasonable care in hiring, supervising and training Defendants Shirey, Greco, LaMalfa, and White. (Am. Compl. ¶ 88.)

As an initial matter, it is unclear whether Plaintiff asserts this claim pursuant to § 1983 or state law. In cases arising under § 1983, municipalities cannot be held liable on a respondeat superior theory. _Monell_, 436 U.S. at 691. Rather, municipalities are only liable "for their own illegal acts."

Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting

Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)).  As explained

by the Third Circuit, courts have created a "two-path track to

municipal liability under § 1983, depending on whether the

allegation is based on municipal policy or custom."  Mulholland

v. Gov't Cnty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013)

(quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.

1996)).  "A plaintiff must identify the challenged policy,

attribute it to the city itself, and show a causal link between

execution of the policy and the injury suffered."  Losch v.

Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984).

"Further, in order to succeed on claims related to the City's

supervision, training or hiring [an officer] Plaintiff would

have to prove that the City acted with deliberate indifference

to the known or obvious consequences of its acts or its failure

to act."  Adams v. City of Camden, 461 F. Supp. 2d 263, 267

(D.N.J. 2006) (citing Canton v. Harris, 489 U.S. 378, 388, 109

S. Ct. 1197 (1989)). "A showing of simple or even heightened

negligence will not suffice." Id. (further citation omitted).

To the extent the negligent hiring claim rests on a theory

that West Deptford had a "policy" or "custom" of negligent

hiring, it fails for lack of specificity.  See Twombly, supra;

Iqbal, supra.  To the extent Plaintiffs claim a violation of the

New Jersey Tort Claims Act, West Deptford argues Plaintiffs fail

31

to state a claim.  The Court agrees.  Plaintiffs assert a sundry

of negligence claims against West Deptford for its hiring,

supervision, training, and retention of four individuals.

Plaintiffs fail to plead any facts to support these allegations.

Plaintiffs' amended complaint contains only conclusory

allegations and legal conclusions of negligence.  See, e.g., Di

Cosala v. Kay, 91 N.J. 159, 450 A.2d 508 (1982) (tort of

negligent hiring requires a plaintiff to show knowledge of

employer, foreseeability of harm to third persons, and that

through negligence of employer in hiring employee, the

employee's incompetence, unfitness or dangerous characteristics

proximately caused the injury); Polzo v. Cnty. of Essex, 196

N.J. 569, 960 A.2d 375, 384 (N.J. 2008) (under New Jersey law,

to succeed on a negligence claim, a plaintiff must establish a

duty of care, a breach of that duty, proximate cause, and actual

damages).  Accordingly, this claim will be dismissed without

prejudice.[2]

**Count VII: Negligence, Negligent Hiring, Negligent**
            **Supervision/Training/Retention Against**
            **Gloucester County**

In Count VII, Plaintiffs allege that Gloucester County

"breached its duty of care to Plaintiff[s] by failing to

exercise reasonable care in the hiring, supervision, training

---

[2] If Plaintiffs re-plead this claim, they should show compliance
with the notice requirements of the New Jersey Tort Claims Act.

and/or retention of Defendants, Donovan and/or Malfitano and in the decision of those employees to detain, arrest, and/or file a criminal charge against Plaintiffs." (Am. Compl. ¶ 95.) Plaintiffs further allege Gloucester County is liable pursuant to N.J.S.A. 59:2-2 et seq. and a notice of claim has been filed in accordance with N.J.S.A. 59:8-6. (Am. Compl. ¶¶ 96-96.)

The NJTCA provides, "No action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter." N.J.S.A. 59:8-3. A tort claim notice "must be served upon the public entity within 90 days of the accrual of the claim, and failure to do so will forever bar the claimant from recovering against a public entity or public employee." N.J.S.A. 59:8-8. The accrual date under the NJTCA is generally the date on which the alleged tort is committed. Beauchamp v. Amedio, 164 N.J. 111, 751 A.2d 1047, 1050 (2000).

From the face of the amended complaint, Celestin does not allege facts, only conclusory statements, that he complied with the notice requirements of the NJTCA and for this reason, Count VII will be dismissed as to Plaintiff Celestin. Additionally, Plaintiffs' claims against Gloucester County fail to state a claim for the same reasons discussed in Count VI, supra, namely that Plaintiffs' amended complaint contains only conclusory

33

allegations and legal conclusions of negligence.

**Counts VIII and IX: Negligence as to Defendants Marschlowitz, Cundy, Auletto and Jones and Solvay**

In Count VIII, Plaintiffs allege Defendants Marschlowitz, Cundy, Auletto and Jones owed a duty to each of the Plaintiffs "through common law, statutory law and regulatory law to exercise reasonable care." (Am. Compl. ¶ 106.) Plaintiffs further allege these Defendants breached this duty "by failing to exercise reasonable care in securing the property, detaining Plaintiffs, contacting the police and requesting that a criminal charges be filed against Plaintiff, Jean L. Celestin." (Am. Compl. ¶ 107.) In Count IX, Plaintiffs allege Solvay is liable for the negligent acts of its employees on a theory of respondeat superior. (Am. Compl. ¶ 112.)

Again, it is unclear from the complaint whether Plaintiffs are asserting these claims pursuant to § 1983. However, Plaintiffs do not allege these Defendants are state actors. Bailey v. Harleysville Nat'l Bank & Trust, 188 F. App'x 66, 68 (3d Cir. July 18, 2006) ("[I]n the absence of a conspiracy with the police to violate constitutional rights, a business's summons of a police officer to deal with a possible disturbance, does not make it a state actor."). Accordingly, to the extent a § 1983 claim is asserted in Counts VIII and IX those claims will

34

be dismissed.[3]   The Court now turns to whether Plaintiff Celestin has stated a claim in Counts VIII and IX against Defendants Marschlowitz, Cundy, Auletto and Jones under New Jersey law.

Celestin argues that the Defendants had a duty to secure their property from entry by unauthorized parties. (Opp. Br. at 12 [Doc. No. 47].)   Whether or not Defendants had such a duty turns on foreseeability.   "Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others.   If the reasonably prudent person would foresee danger resulting from another's voluntary, criminal acts, the fact that another's actions are beyond defendant's control does not preclude liability."  Trentacost v. Brussel, 82 N.J. 214, 222, 412 A.2d 436, 440 (1980) (internal citations and quotations omitted).

The case Foreign Auto Preparation Serv. Inc. v. Vicon Const. Co., 193 N.J. Super. 420, 423, 474 A.2d 1088, 1090 (App. Div. 1984) concerned vandals who hotwired a bulldozer and damaged adjacent property.   The superior court found that because the harm was not foreseeable the plaintiff failed to state a negligence claim.   The appellate division reversed,

---

[3] To the extent Counts VIII and IX are asserted by the minor Plaintiffs, these claims have been resolved by way of settlement agreement.

holding that there was enough evidence regarding the accessibility of the bulldozer and of recent past experiences of trespassers in its vicinity to state a prima facie negligence claim.  Id. at 424.

In Ocasio v. Amtrak, 299 N.J. Super. 139, 150, 690 A.2d 682, 687 (App. Div. 1997), the appellate division found that a railroad owed a duty of reasonable care to block access to an abandoned train station where a trespasser was injured.  The court found that a trier of fact could find that the railroad should have foreseen trespassers were using the abandoned station as a shortcut given that it had 24 incident reports in two years that train operators had to make emergency stops on the tracks due to trespassers.  Id. at 151.  The Court found that the recognition of a duty of reasonable care was appropriate under all the surrounding circumstances.  Id.

Celestin's theory appears to be that Defendants were negligent because in opening the main gate for a contractor, Plaintiff was able to enter the premises without authorization, which led to him being charged with trespassing.  Plaintiff has pled no facts showing this chain of events was foreseeable, and that a duty should be imposed on Defendants.  Unlike Foreign Auto, Celestin pleads no facts regarding recent trespassers in the vicinity.  And unlike Ocasio, there are no facts

demonstrating that the risk to him should or could have been anticipated.

Additionally, the amended complaint does not plausibly plead that Defendants' alleged negligence in leaving the gate open proximately caused Celestin's arrest. "Proximate cause consists of any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Townsend v. Pierre, 221 N.J. 36, 51 (2015)(internal citations and quotations omitted). Stated another way, when a defendant's alleged negligence was not "a cause of the accident, but simply presents the condition under which the injury was received," there is no proximate causation. Fleuhr v. City of Cape May, 159 N.J. 532, 544 (1999).

Fleuhr is instructive. In that case, a surfer sued a municipality for the alleged negligent supervision of its lifeguards after the surfer was injured in rough surf resulting from an off-shore hurricane. 159 N.J. at 535. While the surfer asserted that the lifeguards were negligent in failing to warn swimmers of the rough conditions, or failing to evacuate the water, id. at 536, the New Jersey Supreme Court held that the asserted negligence was not the proximate cause of the surfer's injuries, rather "the surfer's conduct and the natural conditions of the ocean were the legal causes of the accident."

37

Id. at 534.  The Court reasoned that the lifeguards' alleged negligence was "too remotely or insignificantly related to plaintiff's accident." Id. at 544.

Similarly in this case, it appears that Celestin alleges that by leaving the gate open, Defendants Marschlowitz, Cundy, Auletto, and Jones merely presented the condition under which his injury was received.  Based on the current allegations, the only plausible conclusion to be drawn is that Celestin's own actions were the legal cause of his arrest.

Thus, the Court finds that Celestin fails to state a claim for negligence.  In light of our decision to allow Plaintiff leave to re-plead certain other claims he will be given the opportunity to amend his negligence claim as well in the unlikely event[4] he can cure the deficiencies noted above. Additionally, Celestin's claim against Solvay under a theory of respondeat superior in Count IX is derivative of the alleged

---

[4] We note that our rulings on certain defendants' summary judgments motions and findings of immunity may have significant, if not preclusive, effect on other claims we have granted leave to re-plead.  Rather than to parse out ourselves each of Plaintiff's claims to determine those for which re-pleading would be futile, we leave it to Plaintiff, if he chooses to file a new complaint, to file only those claims that remain viable taking into consideration the totality of this Opinion and the law of the case.  Similarly and conversely, we leave it to the relevant defendant to move to dismiss or if appropriate for summary judgment on any re-plead claims barred as a consequence of this Opinion.

negligence against its employees and thus Count IX also fails to state a claim.

**Count X and XI: Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress Against All Defendants**

Plaintiffs make the following allegations in their amended complaint regarding emotional distress:

- Defendant Marschlowitz was "overly aggressive and harsh in communicating with the Plaintiffs, in detaining the Plaintiffs and refusing to permit them to leave the premises and in requested that a criminal charged be filed against the Plaintiff, Jean L. Celestin, in the absence of probable cause" (Am. Compl. ¶ 115.)

- Defendants Cundy and Auletto "detained and/or imprisoned Plaintiffs and refused to permit them to leave the premises" (Am. Compl. ¶ 116.)

- The minor Plaintiffs were "caused to witness the detention and arrest of their father [and] were caused to experience shock, fear and severe emotional distress as a result of seeing their father confronted by police and arrested" (Am. Compl. ¶ 117.)

- The conduct of each of the Defendants was "outrageous and extreme and it was foreseeable that emotional distress would result therefrom" (Am. Compl. ¶ 119.)

- Defendants' conduct was committed "recklessly in deliberate disregard of a high degree of probability that emotional distress to the Plaintiffs would follow" (Am. Compl. ¶ 120.)

- "[N]o reasonable person could be expected to endure it, [and Plaintiffs] have been prevented from attending to their usual and ordinary activities, have sustained damages of both an economic and non-economic nature, were humiliated and embarrassed, and were caused to suffer injury to their reputation" (Am. Compl. ¶ 123.)

From the face of the amended complaint, and for the reasons set forth supra, Celestin does not plead facts which show compliance with the notice requirements of the NJTCA and for this reason, Counts X and XI will be dismissed as to Plaintiff Celestin to the extent they are asserted against the public entities and employees.  The claims asserted by the minor Plaintiffs against Solvay have been resolved by way of settlement agreement.   The following analysis thus pertains to the remaining claims against the Defendants as asserted by Celestin.

To state a claim for intentional infliction of emotional distress:

> [T]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff

must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.

Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable [person] could be expected to endure it."

Segal v. Lynch, 413 N.J. Super. 171, 186–87, 993 A.2d 1229, 1239 (App. Div. 2010) (citing Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366, 544 A.2d 857 (1988)).  New Jersey courts find this "elevated threshold" to be satisfied "only in extreme cases."  Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23, 766 A.2d 292, 296–97 (App. Div. 2001).  Conduct has been found sufficiently outrageous to support a claim for intentional infliction of emotional distress when a landlord failed to provide central heating, running water and reasonable security in a rent controlled building in an effort to induce the tenants to vacate, 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 455–57, 466, 471–75, 547 A.2d 1134 (App. Div. 1988); when a doctor allegedly told a child's parents that he was "suffering from a rare disease which may be cancerous

41

knowing that the child has nothing more than a mildly infected appendix," Hume v. Bayer, 178 N.J. Super. 310, 319, 428 A.2d 966 (Law Div. 1981); and when an employer referred to an African American employee as a "jungle bunny," Taylor v. Metzger, 152 N.J. 490, 508-21, 706 A.2d 685 (1998)); see also, Williams v. City of Millville, No. 12-7540, 2013 WL 6175538, at *5 (D.N.J. Nov. 22, 2013) (embarrassment in front of one's children is insufficient to be so severe that no reasonable person could be expected to endure it).  The facts as stated in the amended complaint do not state a prima facie case of intentional infliction of emotional distress because Plaintiffs allege no conduct which is extreme or outrageous.

The Court comes to the same conclusion regarding Plaintiffs' claims for negligent infliction of emotional distress.  "This tort is intended to compensate those who witness 'shocking events that do not occur in the daily lives of most people.'" Soliman v. Kushner Companies, Inc., 433 N.J. Super. 153, 177, 77 A.3d 1214, 1229 (App. Div. 2013) (citing Frame v. Kothari, 115 N.J. 638, 644, 560 A.2d 675 (1989)). Events or circumstances that have been found to present cognizable claims under this tort include a mother who discovered her eight-year-old son lying crumpled in the street minutes after he was struck by a bus, Mercado v. Transport of New Jersey, 176 N.J. Super. 234, 422 A.2d 800 (Law Div.1980).

or cases involving loss of a corpse, <u>Muniz v. United Hospitals Medical Center Presbyterian Hospital</u>, 153 N.J. Super. 79, 379 A.2d 57 (App. Div. 1977)." <u>Id.</u> "Negligent infliction of emotional distress requires proof of the traditional elements of negligence, and also evidence that it was 'reasonably foreseeable that the tortious conduct [would] cause genuine and substantial emotional distress or mental harm to average persons.'" <u>Smith v. Harrah's Casino Resort of Atl. City</u>, No. A-0855-12T2, 2013 WL 6508406, at *4 (N.J. Super. Ct. App. Div. Dec. 13, 2013) (quoting <u>Decker v. Princeton Packet, Inc.</u>, 116 N.J. 418, 429-30, 561 A.2d 1122 (1989)).  As the Court found <u>supra</u>, Plaintiff has not sufficiently pled a claim of negligence, and for this reason, Plaintiff's negligent infliction of emotional distress claim fails.

**Count VII: Civil Conspiracy Against All Defendants[5]**

"To make out a § 1983 conspiracy claim, the plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." <u>Fioriglio v. City of Atl. City</u>, 996 F. Supp. 379, 385 (D.N.J. 1998), <u>aff'd</u>, 185 F.3d 861 (3d Cir. 1999) (citing <u>Darr v. Wolfe</u>,

---

[5] The Court assumes this claim is brought pursuant to § 1983.

767 F.2d 79, 80 (3d Cir. 1985)); <u>Ammlung v. City of Chester</u>, 494 F.2d 811, 814 (3d Cir. 1974)).  Having concluded that Plaintiffs' constitutional claims fail, Plaintiffs' conspiracy claim under § 1983 fails because of the absence of an underlying constitutional violation.  <u>Green v. City of Paterson</u>, 971 F. Supp. 891, 909 (D.N.J. 1997) ("Without a constitutional violation, a conspiracy to violate a constitutional right cannot stand."); <u>PBA Local No. 38 v. Woodbridge Police Dep't</u>, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993) ("a § 1983 conspiracy claim is not actionable without an actual violation of § 1983").  This claim will be dismissed without prejudice.

**Count XIV: Malicious Prosecution Against Shirey, Jones and Malfitano**

Celestin alleges that Defendant Jones requested that Defendant Shirey charge Celestin with trespassing.  (Am. Compl. ¶¶ 144, 145.)  Plaintiff further alleges Defendant Malfitano authorized the request.  (Am. Compl. ¶ 145.)  Plaintiff alleges there was no probable cause for his charge and that the charge was dismissed in his favor.  (Am. Compl. ¶¶ 148, 149.)

"Malicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." <u>LoBiondo</u>

v. Schwartz, 199 N.J. 62, 90, 970 A.2d 1007, 1022 (2009)
(further citation omitted).  The absence of any of these
elements if fatal to the successful prosecution of the claim.
Id.  "The essence of the cause of action is lack of probable
cause, and the burden of proof rests on the plaintiff."  Lind v.
Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975).

On the face of the amended complaint, Celestin has not
sufficiently pled facts plausibly showing that Defendants lacked
probable cause to charge him with trespassing.  Plaintiff
alleges he accidently entered Solvay's restricted property which
"contained hazardous chemicals."  (Am. Compl. ¶¶ 102-103.)
While it may be the case that Celestin did not have the
"knowingly" requirement to be convicted, on the face of the
complaint, Plaintiff does not plead facts which show a
reasonable officer would not have reasonably believed a crime of
trespass was committed.  Accordingly, Celestin's malicious
prosecution claim fails and will be dismissed.  Land v. Helmer,
843 F. Supp. 2d 547, 550 (D.N.J. 2012) (dismissing malicious
prosecution claim where plaintiff did not sufficiently allege an
absence of probable cause because a reasonably prudent person
could suspect the plaintiff was criminally liable).

**Count XV: False Imprisonment Against Cundy and Auletto**

Plaintiffs allege that Defendants Cundy and Auletto falsely
imprisoned and detained Plaintiffs without legal process and

without probable cause or reasonable suspicion for the detention.  (Am. Compl. ¶¶ 152-154.)

"False imprisonment is the constraint of the person without legal justification." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591, 969 A.2d 1097, 1117 (2009) (quoting Mesgleski v. Oraboni, 330 N.J. Super. 10, 24, 748 A.2d 1130 (App. Div. 2000)).  The tort of false imprisonment has two elements: (1) "an arrest or detention of the person against his or her will" and (2) "lack of proper legal authority or legal justification." Id.  "A plaintiff need not prove the lack of probable cause, but the existence of probable cause will nevertheless defeat the action." Mesgleski v. Oraboni, 330 N.J. Super. 10, 24-25, 748 A.2d 1130, 1139 (App. Div. 2000).  Here, the Court has determined that Plaintiff Celestin has not sufficiently alleged he was arrested without probable cause.  Accordingly, Count XV will be dismissed without prejudice.

XI.  **CONCLUSION**

Defendants' motions to dismiss will be granted.  The West Deptford Defendants' motion for summary judgment also will be granted.  An appropriate Order follows.

__s/ Noel L. Hillman_____
NOEL L. HILLMAN, U.S.D.J.

Dated: September 29, 2016

At Camden, New Jersey

46